**Opinion filed February 12, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00083-CV
_____

### JOHNNIE E. HARGRAVE, Appellant

### V.

### LAKE CCC, INC. AND BRECHA ROJA LAND CO., LLC, Appellees

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. 23-067-DCCV-46845**

### O P I N I O N

Appellant, Johnnie E. Hargrave, appeals the granting of summary judgment in favor of Appellees, Lake CCC, Inc. (LCCC) and Brecha Roja Land Co., LLC, on their claims, which relates to Hargrave's filing of fraudulent public records. In two issues, Hargrave argues that the trial court: (1) erred in granting summary judgment

on Appellees' claim under Section 12.002 of the Texas Civil Practice and Remedies Code; and (2) abused its discretion in awarding attorney's fees to Appellees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 12.002 (West 2017). We affirm.

## I. *Factual and Procedural History*

Appellees filed an original petition alleging Hargrave fraudulently filed public records in an attempt to commit corporate identity theft of LCCC. In a prior lawsuit, the former Cisco Country Club property (country club property) and the entities owning that property, LCCC and Cisco Country Club, Inc. (CCC), were placed in receivership. The receiver had LCCC's charter reinstated with the Texas State Comptroller and CCC's property transferred to LCCC. Hargrave attempted to intervene in the receivership suit, but the trial court struck his petition. Shortly thereafter, as the petition alleges, Hargrave "apparently decided to try to usurp LCCC for his own benefit" by filing several documents with the Texas Secretary of State (TSOS) and the Eastland County Clerk, purportedly acting on behalf of LCCC. Appellees asserted causes of action against Hargrave, alleging that the filing and recording of a fraudulent instrument or deed violated Section 12.002 of the Civil Practice and Remedies Code (Chapter 12 claim), and that he made, participated in making, signed, or presented fraudulent filings with the TSOS in violation of Section 4.007 of the Business Organizations Code (Chapter 4 claim). *See id.*; TEX. BUS. ORG. CODE ANN. § 4.007 (West 2020). Appellees also sought declaratory relief, statutory damages pursuant to Section 12.002(b), actual and exemplary damages, and attorney's fees. *See* CIV. PRAC. & REM. § 12.002(b), § 37.001–.011 (West 2020). Appellees then filed an application for injunctive relief, seeking a temporary restraining order and a temporary injunction, to enjoin Hargrave from making any further public filings relating to or attempting to take any actions on behalf of LCCC. The trial court granted the requested relief.

After Hargrave filed an answer, Appellees filed a motion for summary judgment on their claims, supported by affidavit testimony, corporate records, public filings, and court records from prior litigation. The summary judgment evidence showed that, during the summer of 2023, LCCC allowed Hargrave, who was attempting to market the country club property as a campground, to remove his personal property with assistance from LCCC directors. Hargrave became upset following an argument over ownership of a golf cart, and he told one of the directors, "now this is really gonna [sic] cost you."

On August 31, 2023, Hargrave filed an "Application for Reservation of an Entity Name" with the TSOS on behalf of "Lake CCC, Inc." As a result of this filing, the TSOS updated LCCC's address to Hargrave's personal address. By this time, LCCC had received a tax clearance letter from the comptroller and had submitted an application for reinstatement to the TSOS. On September 25, 2023, Hargrave filed his own application for reinstatement with the TSOS on behalf of LCCC. He signed the application under penalty of perjury and represented that he was an "officer, director or member of [LCCC]" and that he was authorized to file the application. Hargrave then filed a certificate of amendment with the TSOS changing the name of LCCC to "Cisco Country Club, Inc.," substituting himself as the registered agent, and modifying the registered address to Hargrave's home address. Hargrave also signed this document under penalty of perjury and with the assurance that the amendments were "approved in the manner required by the Texas Business Organizations Code and by the governing documents of the entity."

On October 10, 2023, Hargrave executed a general warranty deed, which provided that LCCC was deeding the country club property to "Cisco Country Club, Inc. a Texas non-profit corporation." He recorded the deed with the county clerk two days later, signing the filing as the registered agent of LCCC.

Appellees argued that the evidence supported the following requests for declaratory relief:

> Hargrave is not (and was not) authorized to take any action on behalf of LCCC and any actions he has taken were and are *ultra vires* and *void ab initio*, including but not limited to his attempt to appoint himself registered agent of LCCC, to change its registered address and/or to change the name of the entity.
>
> That Hargrave's purported name reservation does not give him any rights and/or authority in the LCCC entity.
>
> That the 10/12/23 Warranty Deed is void and unenforceable and that LCCC is the rightful owner of the property, notwithstanding Hargrave's purported name reservation.
>
> That in filing the documents Hargrave filed with the Texas Secretary of State and the Eastland County Clerk, Hargrave has subjected himself to penalties of perjury and for the submission of materially false or fraudulent instruments.

Appellees also argued that the evidence established the statutory elements of their Chapter 12 claim, which, as relevant to this appeal, require that a person file a fraudulent lien, claim, interest, or document against real property with intent to cause another person to suffer financial injury, mental anguish, or emotional distress. *See id.* § 12.002(a). Appellees argued that the deed Hargrave filed with the county clerk should be presumed fraudulent because it purports to create a lien or assert a claim against real property and is not created by consent or agreement of the owner of the real property. *See* TEX. GOV'T CODE ANN. § 51.901(c) (West Supp. 2025). Appellees asserted that Hargrave's "refusal to release the lien/claim" creates a presumption that he "had the intent to harm or defraud another." TEX. PENAL CODE ANN. § 32.49(b) (West Supp. 2025).

Next, Appellees argued that the evidence established as a matter of law the elements of their Chapter 4 claim, due to Hargrave's knowing filing of two

4

materially false instruments with the TSOS: the request for reinstatement; and the certificate of amendment changing the name of LCCC, its registered agent, and its address. *See* BUS. ORGS. §§ 4.007–.008. Appellees asserted that Hargrave had no affiliation with LCCC and that he could not have certified that he is authorized to act on its behalf. Finally, Appellees argued that they were entitled to summary judgment on attorney's fees, which were statutorily authorized for each of its causes of action, based on affidavit testimony and billing records. *See* CIV. PRAC. & REM. §§ 12.006, 37.009; BUS. ORGS. § 4.007(a).

Hargrave responded to Appellees' motion for summary judgment, arguing that he was affiliated with LCCC because of purported oral agreements with LCCC members to transfer their membership to him, but he attached no evidence to support this assertion. Hargrave also attempted to rely upon the prior forfeiture of LCCC's charter. Appellees filed a reply to Hargrave's response, objecting to Hargrave attempting to verify his entire response, and asserting that Hargrave's arguments attempt to relitigate the prior receivership action, which is precluded by res judicata and collateral estoppel. The trial court signed a final judgment granting Appellees' motion for summary judgment on all claims, and awarding $10,000 in Chapter 12 statutory damages, $14,544 in attorney's fees, costs, as well as postjudgment interest. This appeal followed.

## II. *Summary Judgment*

In his first issue, Hargrave argues that the trial court erred in granting summary judgment in favor of Appellees on their Chapter 12 claim.

### A. *Standard of Review and Applicable Law*

We review a trial court's grant of summary judgment de novo. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018). To prevail under the traditional summary judgment standard, the movant has the burden to establish that

there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). If the movant meets its summary judgment burden, the burden shifts to the nonmovant to raise a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded factfinders could differ in their conclusions in light of all of the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

B. *Analysis*

Hargrave challenges only Appellees' entitlement to summary judgment on their Chapter 12 claim. In particular, Hargrave maintains that Appellees failed to prove as a matter of law that Hargrave "intended to cause anyone to suffer physical injury, financial injury, or mental anguish as the result of his filings." Appellees respond that the undisputed evidence demonstrates that Hargrave acted with the requisite intent, including evidence that Hargrave: (1) is not affiliated with LCCC; (2) was never granted authority to act on behalf of LCCC; (3) has no claim to membership in LCCC; and (4) lacked authority to file records with the TSOS and

county clerk on behalf of LCCC, transfer property belonging to LCCC, and change LCCC's name, registered agent, or registered address.

The elements of a Chapter 12 claim are that the defendant (1) made, presented, or used a document or other record with knowledge that it was a fraudulent claim against real property, (2) intended the document to be given legal effect, and (3) intended to cause physical or financial injuries or mental distress. CIV. PRAC. & REM. § 12.002(a); *see Brewer v. Green Lizard Holdings, L.L.C. Series SR*, 406 S.W.3d 399, 403–04 (Tex. App.—Fort Worth 2013, no pet.). A successful Chapter 12 claimant is entitled to the greater of $10,000 or actual damages and court costs, reasonable attorney's fees, and exemplary damages. CIV. PRAC. & REM. § 12.002(b).

As stated above, Hargrave challenges whether Appellees established the intent element of a Chapter 12 claim. A plaintiff can prove the intent to cause injury for a Chapter 12 claim by direct or circumstantial evidence. *See Nationstar Mortgage LLC v. Barefoot*, 654 S.W.3d 440, 455 (Tex. App.—Houston [14th Dist.] 2021, pet. denied); *Taylor Elec. Servs., Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 528 (Tex. App.—Fort Worth 2005, no pet.). Circumstantial evidence is "indirect evidence that creates an inference to establish a central fact." *In re Lipsky*, 460 S.W.3d 579, 588–89 (Tex. 2015) (orig. proceeding). "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) (quoting *Tubelite, a Div. of Indal, Inc. v. Risica & Sons, Inc.*, 819 S.W.2d 801, 805 (Tex. 1991)).

Appellees' summary judgment evidence showed that Hargrave, having no affiliation with LCCC, executed and filed a deed purportedly conveying the country club property from LCCC to a separate entity controlled by Hargrave, while having

previously attempted to use the property as a campground. Further, Hargrave contemporaneously filed with the TSOS documents on behalf of LCCC, including an application for reinstatement, and a certificate of amendment attempting to change the name of LCCC to "Cisco Country Club, Inc.," the registered agent to Hargrave, and the registered address to Hargrave's home address. Hargrave performed these actions despite unsuccessfully attempting to intervene in the receivership proceeding, whereby LCCC's charter was reinstated. Prior to these actions, Hargrave had a contentious encounter with LCCC directors in a dispute over property and threatened, "now this is really gonna [sic] cost you."

Taken together, the evidence shows that Hargrave had no affiliation with LCCC, had knowledge of a prior receivership action in which LCCC's charter was reinstated under separate leadership, expressed animosity over the actions of directors, had a motive to use the country club property as a campground, and attempted to gain control of LCCC by filings with the TSOS and the county clerk. Further, there is nothing in the record to suggest that Hargrave filed the deed to legitimately protect his property interests. *Compare Brasch v. Lane*, No. 01–09–01093–CV, 2011 WL 2183876, at *6 (Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (concluding fact issue existed on intent-to-harm element where there was evidence suggesting that defendants filed lis pendens because they believed that their interest was threatened and that they were merely protecting their rights), *with Bernard v. Bank of Am., N.A.*, No. 04-12-00088-CV, 2013 WL 441749, at *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (mem. op.) ("Without any supportive legal basis, the Bernards unilaterally drafted, signed, and filed the 'Substitution of Trustee' document to prevent the Bank from foreclosing its lien. This conduct, coupled with the Bernards' failure to make the monthly mortgage payments for nearly two years while still residing in the home, demonstrates an

intent to cause the Bank financial harm."). We conclude that Appellees presented sufficient evidence to establish as a matter of law that Hargrave threatened, intended, and attempted to cause financial injuries and/or mental distress when filing the deed with the county clerk. CIV. PRAC. & REM. § 12.002(a); *see Brewer*, 406 S.W.3d at 403–04.

In attempting to rebut this evidence, Hargrave filed a verified summary judgment response, but he attached no evidence. Thus, he did not present competent summary judgment evidence that would create a fact issue regarding the intent element. *See* TEX. R. CIV. P. 166a(f); *Am. Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 830 (Tex. 1994) (citing *Keenan v. Gibraltar Sav. Ass'n,* 754 S.W.2d 392, 394 (Tex. App.—Houston [14th Dist.] 1988, no writ) (holding that pleadings and responses, even if verified, are not competent summary judgment evidence)). Accordingly, the trial court did not err in granting summary judgment on Appellees' Chapter 12 claim. *See* TEX. R. CIV. P. 166a(a), (c); *Koopmann*, 547 S.W.3d at 865. We overrule Hargrave's first issue.

### III. *Attorney's Fees*

In his second issue, Hargrave argues that the trial court's award of attorney's fees should be reversed and remanded for a new trial "[b]ecause Appellees failed to prove [their Chapter 12 claim] as a matter of law." Hargrave explains that it would be "inequitable and unjust to uphold the award" under Section 37.009 of the Civil Practice and Remedies Code and that segregation of the fees is required, *if* Appellees do not prevail on their Chapter 12 claim. This issue is contingent on Hargrave prevailing on his first issue, which we have overruled. Therefore, we likewise overrule Hargrave's second issue. *See Brown v. Gilmore*, No. 04-22-00369-CV, 2023 WL 5266022, at *4 (Tex. App.—San Antonio Aug. 16, 2023, no pet.) (mem. op) ("Because Brown's third issue—entitlement to attorney's fees—is contingent

9

upon her prevailing on her second issue, we likewise overrule her third issue.").

IV. *This Court's Ruling*

We affirm the trial court's judgment.


W. BRUCE WILLIAMS

JUSTICE


February 12, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.